THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* CHARLES SMITH, Appellant.

(Argued March 23, 1932; decided April 26, 1932.)

*Albert E. Kane* for appellant. It is not a violation of the ordinance to discuss atheism on the streets. (*Matter of Walker*, 200 Ill. 566; *Butts* v. *Swarthwood*, 2 Cow. 431; *Gibson* v. *American Life Ins. Co.*, 37 N. Y. 580; *People* v. *Stoll*, 242 N. Y. 453; *People* v. *Schmidt*, 222 N. Y. Supp. 647; *People* v. *Conti*, 216 N. Y. Supp. 442; *Kirby* v. *State*, 125 N. Y. Supp. 742; *People* v. *Swasey*, 180 N. Y. Supp. 630.)

*Thomas C. T. Crain, District Attorney (Joshua Egelson* of counsel), for respondent. The defendant violated the ordinance. (*Cline* v. *State,* 130 Pac. Rep. 510; *Matter of Hinckley,* 58 Cal. 457; *State* v. *Amana Society,* 109 N. W. Rep. 894.)

CRANE, J. The defendant is an atheist and has been convicted of talking atheism on the public streets of the city of New York. He is president of the American Association for the Advancement of Atheism, and on the 20th day of October, 1931, was trying to advance it to a select group at Columbus Circle and Fifty-ninth street. He was arrested, tried and convicted of doing the very thing he was denouncing — of conducting public worship in violation of the city ordinance.

Section 20 of chapter 23 of article 3 of the Ordinances of the City of New York is headed " Public Worship," and reads as follows: " No person shall be concerned or instrumental in collecting or promoting any assemblage of persons for public worship or exhortation, or under any pretense therefor, in any park, street, or other public place; provided, that a clergyman or minister of any denomination, or any person responsible to or regularly associated with any church or incorporated missionary society, or any lay-preacher, or lay-reader may conduct religious services in any public place or places specified in a permit therefor, which may be granted and issued by the police commissioner. This section shall not be construed to prevent any congregation of the Baptist denomination from assembling in a proper place for the purpose of performing the rites of baptism, according to the ceremonies of that church."

The thing prohibited by this ordinance is the collecting of persons for public worship or exhortation to worship on the public streets without a permit. Worship has a well-known and well-defined meaning in common use among

the people of this community. It means any form of religious service showing reverence for the Divine Being, or exhortation to obedience to or the following of the mandates of such Being. Many are the ways of approach, and varied are the methods of showing this reverence, but even the societies for the advancement of social welfare find incentive in carrying out what is interpreted as a divine purpose or will. All this the defendant ridiculed and denounced as being a superstition. According to him and his society, there is no Divine Being. Instead of gathering an assembly for public worship or exhortation to public worship, he was doing just the reverse; he was denouncing worship in any form and calling upon his hearers to desert such a practice. The ordinance did not apply to him.

He was arrested — not having a permit. But those to whom a permit may be issued indicates that this ordinance had reference to religious services and assemblies of some kind. Thus, permits may be issued to clergymen or ministers of any denomination or a person responsible to or regularly associated with any church or incorporated missionary society, or any lay preacher or lay reader. These persons may receive a permit from the Police Commissioner. The defendant could not qualify for any of these callings; therefore, it is clear that the section relating to public worship upon the streets had reference to religious services of some kind and did not include the attempt of the defendant to show that for centuries the majority of us have been wrong. It is conceded that for political meetings and others of like nature no permit is necessary. Such gatherings violate no law unless they become a public nuisance or interfere with traffic and the like. Even the assembly gathered by the defendant may subject him to such a prosecution should it become disorderly. (Penal Law, § 722, " Disorderly Conduct; " Penal Law, § 2092, " Unlawful Assemblies.") Should it be that all other persons except the defendant were

permitted to address others in the public streets, a very serious question might arise as to the violation of the Fourteenth Amendment of the Federal Constitution, which guarantees the equal protection of the law. We need not dwell upon the subject, as we find that the defendant has not violated this provision of the New York City Ordinances, and, therefore, reverse his conviction and direct his discharge.

The judgment of the Appellate Part of the Court of Special Sessions and that of the Magistrates' Court should be reversed and the complaint dismissed.

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur; KELLOGG, J., not sitting.

Judgments reversed, etc.